EVELYN HERNÁIZ, Plaintiff and Appellant, *v.* JOSÉ ESTEBAN GONZÁLEZ ET AL., Defendants and Appellees.

No. R-65-22.    Decided December 23, 1966.

*Jiménez, Valdés & Irizarry* for appellant.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

PER CURIAM: A complaint was filed requesting the transfer to appellant, Evelyn Hernáiz, the custody of her niece, María Eugenia Hernáiz, six years old, which provisional custody had been granted by the Division of Public Welfare to appellees Juan Esteban González and his wife Isabel Santiago de González.

The parties stipulated that the girl is being well treated and well taken care of by appellees. The trial judge concluded that the latter have been giving María Eugenia all the necessary attention, care, food, and clothing and they treat her as their own child, without establishing any difference in the care and attention they give their own children, to the point that the girl has completely adapted herself to appellees' home and refers to them as her parents.

In his findings of fact the trial judge copies the following from the social worker's report.[1] "The girl is evidently surrounded by persons who love and pamper her. She is the center of attraction of the family group. She calls González and his wife 'daddy and mammy' and their children her brothers and sisters. The minor is shy because of the incidents which have arisen in relation to her." In an interview with her she indicated she did not love her aunt . . . she stated that she preferred to stay with her parents and her brothers and sisters.

---

[1] The parties stipulated that the case be submitted to the Office of Public Welfare in order that, after the corresponding investigation, it render a report to the court.

The trial judge concluded that Evelyn Hernáiz is a solitary woman who lived in New York; that for the purpose of taking charge of some nephews and nieces placed by the Office of Public Welfare in a foster home, she intends to settle in Puerto Rico; that at present she lives in her friend's house in Puerta de Tierra Housing Project; and that at the time the judgment was rendered by the trial court she was not permanently employed since she was attending an apprentice course in a clothing factory with a maximum salary of $28 a week.

The trial court concluded that since there does not exist any provision of law establishing an order of preference as to the person to whom the custody of a minor corresponds after the death of his father and mother, it is within the province of the court, in the exercise of its power of *parens patriae* to determine the question, considering, first of all, the welfare and happiness of said minor; that taking María Eugenia away from the environment of good and affectionate family relations in which she lives to move her to another place, even with her maternal aunt, will create in the girl an emotional trauma which undoubtedly would have harmful consequences in her development and her system.

Appellant adduces that the trial court erred in (1) determining that appellant is not entitled to the custody of María Eugenia because there does not exist any provision of law establishing an order of preference in patria potestas upon the death of a child's parents; (2) in exercising its power of *parens patriae*; and (3) in imposing on appellant the burden of proof as to whether or not it was convenient for the minor to be under her custody.

The errors assigned were not committed. Appellant bases her assignments of error essentially on the provision of § 10(d)(2) of the Public Welfare Act of Puerto Rico

(8 L.P.R.A. § 10(d)).[2] She insists that this provision establishes a preference as to who has the right to the custody of a minor who is under the custody of the Public Welfare Division. She is not right. Said Act only provides that said Division shall retain the custody and supervision of each child received, until the latter is returned to his parents or his relatives, or is discharged, or is adopted, or is committed by a court division of competent jurisdiction to other custody or supervision. The provision in question does not fix a mandatory preference as to who has the right to the custody of the child when the patria potestas ceases by reason of the parents' death. It is optional on the Superior Court to dispose of the custody of the child in one of the manners cited and to grant to one of the persons enumerated by this Act, within the sound and cautious exercise of its power of *parens patriae* under the providence of the court. This power should be exercised, as it was exercised in this case, by the trial court, so as to grant the custody of the child in the manner and to the person most convenient and favorable to the minor. It is essential that such custody provide for the latter's welfare and development. *Muñoz* v. *Torres*, 75 P.R.R. 476 (1953); *Guijarro* v. *Lluberas*, 58 P.R.R. 469 (1941); *Chardón* v. *District Court*, 45 P.R.R. 604 (1933). There is no circumstance showing that the present custody of María Eugenia should cease because it is prejudicial, inconvenient, or fails to provide adequately for her welfare and development. On the contrary it was accepted by appellant that the girl is happy in the home where she is living

---

[2] Section 10(d)(2) of the Public Welfare Act provides that:

". . . the Division shall . . . discharge the public welfare functions . . . following . . .:

"(2) To accept dependent or neglected children committed to its custody by the Superior Court. . . . The Division shall retain the custody and supervision of each child received, until the child is returned to his parents or either of them, is returned to his relatives, is discharged as no longer in need of assistance, is adopted, or is committed by a court division of competent jurisdiction to other custody or supervision."

and that she is well treated, loved and taken care of, as another member of the family. There does not appear from the record any evidence that appellant could improve on this situation, aside from the aforementioned aunt's love and that she intends to create for her a home together with her other five blood-brothers and sisters. It should be noticed, however, that this does not go beyond an expression of good wish, since appellant has not constituted a home yet. It is not clear how she will take care of six children when she has to go to work in a factory to provide for the necessities of her home, food, clothing, medicines, and other incidental needs. She does not indicate who is going to take care of the children, who will supervise their actions, who will wait on them and fix their meals on time, while appellant is working away from home. We agree with the trial judge that under such circumstances, it was wiser not to alter the good present condition of the girl in question.

This being a temporary custody, it should not be understood that the foregoing definitively adjudges the right of appellant, when the circumstances so justify, to have the custody of the child in question, and in considering that or any other change in the aforementioned custody, consideration should be given, among other pertinent factors, to the desirability for the girl to grow together with her full-blood brothers and sisters in the proper and protective home which may be provided by her aunt, appellant in this case.

For the reasons stated, the judgment rendered in this case will be affirmed.